```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| WILLIAM B., | 1:20-cv-13849-NLH |
| Plaintiff, | **OPINION** |
| v. |  |
| COMMISSIONER OF SOCIAL SECURITY,[1] |  |
| Defendant. |  |

**APPEARANCES:**

PAUL HOWARD YOUNG
YOUNG, MARR, MALLIS & DEANE, LLC
3554 HULMEVILLE RD.
SUITE 102
BENSALEM, PA 19020

    *On behalf of Plaintiff*

ELIZABETH S. MATONI
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court under § 1614(a)(3)(A) of the Social Security Act, as amended 42 U.S.C. § 1382c(a)(3(A),

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.

regarding Plaintiff's application for supplemental security income ("SSI")[2] under Title XVI of the Social Security Act. 42 U.S.C. § 1381 et seq.  The issue before the Court is whether the decision of Administrative Law Judge ("ALJ") that Plaintiff was not disabled at any time since November 4, 2008, the date the Commission last determined Plaintiff was not disabled, was supported by substantial evidence.  For the reasons stated below, this Court will affirm the Commissioner's decision.

I.     BACKGROUND AND PROCEDURAL HISTORY

On January 11, 2018, Plaintiff filed an application for SSI, alleging that he became disabled on June 2, 1988.  The ALJ considered evidence of his claimed disability dating from November 3, 2008 onward.[3]  Plaintiff claims that he can no longer work as a property assessment monitor, because of his impairments of sickle cell anemia, asthma, and anxiety.[4]

Plaintiff's claim was denied initially and upon

---

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] Plaintiff previously applied for SSI alleging an onset date of June 2, 1988, the date of his birth.  That request was denied on November 3, 2008. (R. at 12).

[4] On application date of January 11, 2018, Plaintiff was 29 years old, which is defined as "a younger individual" (age 18-49).  20 C.F.R. § 404.1563.

reconsideration.  Plaintiff requested a hearing before an ALJ, which was held on December 6, 2019.  On January 2, 2020, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on September 11, 2020, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the

Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.**    **Standard for SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work she has done in

6

        the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

    5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

    This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

    **C.    Analysis**

    At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 11, 2018, the

7

application date.  At step two, the ALJ found that Plaintiff's impairments of sickle cell disease and asthma were severe.  The ALJ also determined that the impairment of anxiety was not severe.  At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of his listed impairments.

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary level,[5] with certain exertional restrictions.  At steps four and five, the ALJ determined that Plaintiff was not able to perform his past relevant work, but Plaintiff's RFC rendered him capable of performing other jobs in the national economy, such as a document preparer, surveillance systems monitor, or a table worker.  The ALJ therefore concluded that Plaintiff was not disabled.

Plaintiff argues that the ALJ erred in her decision because she failed to consider whether Plaintiff met Medical Listed Impairment 7.18 for Repeated Complications of Hematological Disorders, failed to accord proper weight to Plaintiff's treating physician, Dr. Stephen Wallace, failed to accord proper

---

[5] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

8

weight to Plaintiff's testimony, and failed to follow the vocational expert's conclusions.

The ALJ's failure to explicitly address Listing 7.18 presents a close call for the Court.  The Third Circuit has ruled that it would be preferable for ALJs to specifically identify each of the listed impairments under consideration in a case, but as long as the ALJ's discussion of medical impairments allows the court to evaluate which listings were considered, the ALJ's decision may be upheld.  Arroyo v. Comm'r of Soc. Sec., 155 F. App'x 605, 608 (3d Cir. 2005) ("Although we would encourage ALJs to specifically identify the listed impairments under consideration, we are able to discern the particular listed impairments considered in this cased based on the ALJ's discussion of the relevant evidence and his related conclusion that Arroyo's combined impairments were not severe enough to "'meet or medically equal one of the listed impairments.'") "[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements." Scuderi v. Comm'r of Soc. Sec., 302 F. App'x 88, 90 (3d Cir. 2008).  Generally, even if the ALJ does not enumerate the listings under consideration, a statement that none of the listings applied followed by a searching review of

9

the medical evidence is sufficient.  See Polanco v. Colvin, 2016 WL 4408821, at *2 (D.N.J. Aug. 16, 2016); Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 960 (3d Cir. 2006) (affirming the ALJ's decision where "the ALJ implicitly addressed in the negative each of the requirements of [a particular listing]").

Here, the ALJ did not specifically mention Listing 7.18.  However, the ALJ made clear that she was considering whether Plaintiff's impairments met any of the Listings.  (R. at 17).  ("The undersigned has considered all of the claimant's impairments individually and in combination but can find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the listings.")  The fact that the ALJ explicitly referenced Listing 7.05, (id.), does not change the Court's conclusion because she "implicitly addressed in the negative each of the requirements of" Listing 7.18.  Sassone, 165 F. App'x at 960.

Listing 7.18 presents a carveout for hematological disorders that do not fall under the category of another listing.  Listing 7.18 provides:

> **Repeated complications of hematological disorders** (see 7.00G2) including those complications listed in 7.05, 7.08, and 7.10 but without the requisite findings for those listings, or other complications (for example, anemia, osteonecrosis, retinopathy, skin ulcers, silent central nervous system infarction, cognitive or other mental limitation, or limitation of joint movement), resulting in significant, documented symptoms or signs (for example, pain, severe fatigue, malaise, fever, night sweats,

10

>
> headaches, joint or muscle swelling, or shortness of breath), and one of the following at the marked level (see 7.00G4)
>
> A. Limitation of activities of daily living (see 7.00G5).
>
> B. Limitation in maintaining social functioning (see 7.00G6).
>
> C. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (see 7.00G7).

(Listing 7.18, Soc. Sec. Admin., https://www.ssa.gov/disability/professionals/bluebook/7.00-HematologicalDisorders-Adult.htm#7_00G7. (last visited Mar. 6, 2022)) (bold in original).

The ALJ implicitly determined in the negative each of the three subparts in Listing 7.18.  With respect to limitations on activities of daily living, which Listing 7.00G5 explains includes "a serious limitation in your ability to maintain a household or take public transportation because of symptoms such as pain, severe fatigue, anxiety, or difficulty concentrating, caused by your hematological disorder", the ALJ addressed Plaintiff's ability to care for himself.  The ALJ noted that Plaintiff had normal concentration skills and was able to perform basic hygiene, also weighing heavily that Plaintiff had been able to attend college.  (R. at 16, 18).

For a limitation in maintaining social functioning, which Listing 7.00G6 describes as "a serious limitation in social

11

interaction on a sustained basis because of symptoms such as pain, severe fatigue, anxiety, or difficulty concentrating, or a pattern of exacerbation and remission, caused by your hematological disorder," the ALJ discussed Plaintiff's social skills and noted that he had no more than a "mild" limitation in "interacting with others."  (R. at 16).

Finally, for a limitation on completing tasks in a timely manner, which Listing 7.00G7 describes as "a serious limitation in your ability to sustain concentration or pace adequate to complete work-related tasks because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating caused by your hematological disorder," the ALJ stated, "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has mild limitations."  (R. at 16).  Even though the ALJ did not specifically mention Listing 7.18, because she analyzed the evidence particular to all three elements of it, the Court finds no error here.

The Court also does not discern any error in the ALJ's decision to reject Dr. Wallace's medical opinion.  The ALJ specifically noted that Dr. Wallace's "opinion is not consistent with the opinions of consulting physicians who considered the claimant's medical record." (Id. at 20).  It is completely acceptable for an ALJ to reject a contrasting medical opinion as long as he or she "explain[s] his conciliations and rejections."

12

Burnett, 220 F.3d at 122. The ALJ did so here by explaining that Dr. Wallace's conclusions about Plaintiff's limitations were unpersuasive because the record showed that most of the time Plaintiff was able to manage his symptoms with medications and doctor visits. (R. at 20). The ALJ made this statement after a lengthy analysis of how the objective medical evidence stacked up. (Id.)

The same is true of Plaintiff's argument that the ALJ improperly considered Plaintiff's hearing testimony. (ECF 8 at 16-18). Plaintiff argues that the ALJ mischaracterized his testimony by understanding him to have testified that he had been dealing with his medical impairments his entire life and therefore concluding that Plaintiff was able to manage the conditions. (Id.) Upon the Court's review of the hearing testimony, the Court concludes that the ALJ's conclusion that Plaintiff had been successfully managing his symptoms for his entire life to be consistent with Plaintiff's hearing testimony. (R. at 18, 35). Just because Plaintiff would have liked the ALJ to draw a different conclusion does not render that conclusion unsupported by substantial evidence. Brown, 845 F.2d at 1213 (noting that the conclusion of the ALJ must be reasonable, not that the district court would have come to the same conclusion).

Plaintiff's argument that the ALJ did not consider the vocational expert's testimony is also unavailing. Plaintiff

points out that the vocational expert opined that there would not be work in the national economy for someone who had to miss work three days per month due to sickle cell disease and that the maximum tolerance for absenteeism would be one day per month. (ECF 8 at 18-19). Plaintiff further contends that the record shows that Plaintiff would have to miss work a minimum of 1-2 days a month due to his conditions (Id. at 19). While the vocational expert did opine that three days a month of absenteeism compelled a conclusion of no work, (R. at 55-57), the ALJ did not accept that factual predicate.

More specifically, the ALJ separately discussed her conclusion that the degree of absenteeism described by Plaintiff, based on the opinion of Dr. Wallace, was not supported by the other medical evidence and opinions in the record, which the ALJ discussed in adequate detail and under the relevant standard. (Id. at 20). Moreover, when questioned by the ALJ about his history of absenteeism on a monthly or yearly basis his answers were largely non-responsive, (R. at 58-60), and his employment records from his most recent employment were not before the ALJ at the time of the hearing. (R. at 59). This Court is not empowered to substitute its reasoning for that of the ALJ when the ALJ's opinion is supported by substantial evidence. Williams, 970 F.2d at 1182.

### III. Conclusion

For the reasons expressed above, the decision of the ALJ was supported by substantial evidence and must be affirmed.

An accompanying Order will be issued.

Date: March 7, 2022                    s/   Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.